UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERITREAN ASSOCIATION OF GREATER SEATTLE,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>HENOCK TECKLE GEBREKIDAN et al.,<br><br>　　　　　　　Defendant. | CASE NO. 3:24-cv-05517-DGE<br><br>ORDER ON MOTIONS TO DISMISS (DKT. NOS. 34, 40, 43) |

## I   INTRODUCTION

This matter comes before the Court on multiple motions to dismiss. On October 18, 2024, Defendants Hadush Brhane, Yordanos Gebremichael Gebregiorgis, Henock Teckle Gebrekidan, Solomon Gebreyesus, Temesghen Kahsay, Gebrehiwet Teklehaimanot, Elen Tesfaghiorghis, Afewerki Tesfamariam, Esayas Tewolde Tesfamicael, Yonatan Tewelde, Haile Angesom Tseada, and Awet Tsehaye moved to dismiss the Amended Complaint (Dkt. No. 22) brought by Plaintiff Eritrean Association in Greater Seattle ("EAGS") (Dkt. No. 34). On

December 4, 2024, Defendant Saba Kidane Heritage likewise moved to dismiss Plaintiff's Amended Complaint for failure to state a claim. (Dkt. No. 40.)[1] On December 13, 2024, Plaintiff moved to dismiss Defendants' counterclaims. (Dkt. No. 43.) Each motion is now ripe for disposition. Having considered the record and the Parties' briefing in full, the Court DENIES Defendants' motions to dismiss (Dkt. Nos. 34, 40) and GRANTS Plaintiff's motion to dismiss (Dkt. No. 43) for the foregoing reasons.

## II   BACKGROUND

### A. Factual Background

The following facts are taken from Plaintiffs' Amended Complaint and are deemed true for purposes of ruling on Defendants' Motions. (*See* Dkt. No. 22). Plaintiff EAGS is a Washington nonprofit organization "composed of private Eritrean American citizens and refugees from ongoing conflicts in the horn of Africa that settled in Seattle starting in the early 1980s." (Dkt. No. 22 at 2.) EAGS holds multiple cultural festivals each year. (*Id*.) From August 4, 2023, through August 6, 2023, EAGS hosted the 49th Annual Eritrean Festival in Tacoma, Washington at the Tacoma Convention Center. (*Id*. at 6.) The City of Tacoma approved and permitted the event, granting EAGS use of the Tacoma Convention Center for the duration of the festival. (*Id*. at 7.) The portion of Market Street that abuts the Tacoma Convention Center to the West—Market Street between South 15th Street and South 17th Street—was also closed by permit for the festival. (*Id*.) The premises were "fenced, barricaded

---

[1] Counsel did not appear for Defendant Heritage until December 4, 2024, at which point the motion to dismiss (Dkt. No. 40) was immediately filed. As the two motions to dismiss (Dkt. Nos. 34 and 40) are materially identical and together include all Defendants in this matter, they will be treated together for the purposes of this Order.

with ecology blocks, gated, and secured by private security and regional law enforcement officers" prior to the festival. (*Id*.)

Plaintiff alleges that on August 5, 2023, over one hundred organized "vandals" led by the named Defendants departed from Seattle to Tacoma in charter buses. (*Id*.) Plaintiff asserts Defendants planned a premeditated attack on the festival to be carried out by themselves and the "vandals." (*Id*.) Accordingly, Plaintiff states "each of the defendants were members of, and engaged in, a joint venture and common enterprise and were acting within the course and scope of and in pursuance of said joint venture and enterprise." (*Id*. at 5.) Plaintiff specifically claims that:

- Defendant Afewerki Tesfamariam pursued festival attendees with weapons;

- Defendants Gebrehiwet Teklehaimanot, Awet Tsehaye, Esayas Tewolde Tesfamicael, and Henock Teckle Gebrekidan instructed "vandals" armed with metal poles and sticks to exit the buses and breach the secure fenced area around the festival;

- Defendants Henock Teckle Gebrekidan, Saba Kidane Heritage, Awet Tsehaye, Temesghen Kahsay, Elen Tesfaghiorghis, Gebrehiwet Teklehaimanot, Esayas Tewolde Tesfamicael, Haile Angesom Tseada, Yordanos Gebremichael Gebregiorgis, Afewerki Tesfamariam, Solomon Z Gebreyesus, Yonatan Tewelde, and Hadush Brhane assaulted and/or led others to assault EAGS's private security guards and Festival attendees;

- Defendants Henock Teckle Gebrekidan and Temesghen Kahsay destroyed property belonging to the festival;

- Defendants Henock Teckle Gebrekidan, Temesghen Kahsay, Awet Tsehaye, Yordanos Gebremichael Gebregiorgis, and Solomon Gebreyesus attempted to tamper with food prepared for the festival, disrupting food operations, and "destroyed the Festival's approved apparel, craft, equipment, and merchandise vendors' stations and tents, and stole the merchandise that was not destroyed";

- Defendant Awet Tsehaye "trashed" vendor merchandise;

- Defendants Esayas Tewolde Tesfamicael and Yordanos Gebremichael Gebregiorgis stole vender merchandise;

- All named Defendants aided the "vandals" in burning vendors' stations and tents with "long candle lighters";

- Defendants Haile Angesom Tseada, and Hadush Brhane attacked and assaulted festival attendees and organized a large group of "vandals" to stand at the entrance of a number of hotels directly across from the festival to attack attendees when they exited their hotels;

- Defendants Haile Angesom Tseada, Elen Tesfaghiorghis, and Hadush Brhane "assaulted, battered, intimidated, threatened and/or harassed" festival attendees as they crossed the street and attempted to enter the Tacoma Convention Center

- Defendants Henock Teckle Gebrekidan, Elen Tesfaghiorghis, Saba Kidane Heritage, Awet Tsehaye, Temesghen Kahsay, Gebrehiwet Teklehaimanot, Esayas Tewolde Tesfamicael, Haile Angesom Tseada, and Yordanos Gebremichael Gebregiorgis, Afewerki Tesfamariam, Solomon Z Gebreyesus, Yonatan Tewelde, and Hadush Brhane organized themselves at the entrance of the Tacoma Convention Center block access to the doors.

(*Id*. at 7–9.) Plaintiff asserts that Defendants' actions resulted in "over eight law enforcement officers and over seventy private security officers" being dispatched to the festival. (*Id*. at 7.) Plaintiff claims that EAGS was required to pay law enforcement and private security officers "hundreds of thousands of dollars" for their response efforts. (*Id*.) Plaintiff further claims that Defendants "caused hundreds of thousands of dollars in personal property damage to the detriment of EAGS" and caused "scores" of festival attendees to leave the festival, resulting in "severe economic harm" to EAGS "in the form of lost and refunded ticket sales, hotel no show charges, vendor tent sales, loss of goods and services purchases at the festival, and claims by assault victims, the Tacoma Convention Center, Tacoma Police Department, and/or third-party vendors authorized by EAGS to conduct business inside of the Festival." (*Id*. at 9–10.)

**B. Procedural Background**

Plaintiff's Amended Complaint asserts five causes of action: trespass to land; trespass to chattels; conversion; intentional interference with contractual relations; and intentional interference with prospective economic advantage. (*Id*. at 10–15.) Defendants bring two

ORDER ON MOTIONS TO DISMISS (DKT. NOS. 34, 40, 43) - 4

1  counterclaims: defamation and abuse of process.  (Dkt. No. 35 at 17–19.)  In their motions to

2  dismiss (Dkt. Nos. 34 and 40), Defendants assert Plaintiff's claims should be dismissed for

3  failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 34 at 2.)

4  Likewise, Plaintiffs argue that Defendant's counterclaims should be dismissed for failure to state

5  a claim.  (Dkt. No. 43 at 5.)

6                                                   **III     DISCUSSION**

7     **A.  Legal Standard**

8  On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

9  12(b)(6), the Court must accept as true all well-pleaded factual allegations and construe the

10  allegations in favor of the non-moving party.  *See Wood v. City of San Diego*, 678 F.3d 1075,

11  1080 (9th Cir. 2012).  The Court need not, however, assume the truth of conclusory allegations.

12  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause

13  of action, supported by mere conclusory statements, do not suffice.").  "To survive

14  a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

15  a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

16  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial

17  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

18  inference that the defendant is liable for the misconduct alleged." *Id*.

19     **B.  Defendants' Motion to Dismiss**

20  Defendants bring two central arguments in their motion to dismiss.  First, Defendants

21  assert that "Plaintiff's Complaint lumps Defendants together as 'Vandals' and fails to specify the

22  actions of each individual Defendant."  (Dkt. No. 34 at 3.)  Such "vague and conclusory

23  statements are insufficient pleading" under the Rule 12(b)(6) standard, Defendants argue.  (*Id*.)

24

Second, Defendants claim that "[t]he protest at the Eritrean Festival was an exercise of Defendants' First Amendment rights to freedom of speech and assembly" and that "Plaintiff's Complaint fails to allege facts demonstrating that the named Defendants actions exceeded the bounds of protected speech." (*Id*. at 5.)  Plaintiff does not cite legal authority to support this conclusory proposition. (*Id*.)  Indeed, as Plaintiff points out, Defendants "cite *no* authority describing the elements of and provide no legal analysis of Plaintiff's five claims" and similarly cite no authority supporting the assertion that the factual allegations in the complaint are "insufficient." (Dkt. No. 45 at 7, 12) (emphasis added).  The only legal authority referenced throughout Defendant's entire motion is *Iqbal* and *Twombly*.  (*See generally* Dkt. No. 34.)

As Defendants should know, "the failure to cite [legal] authority is grounds itself for rejecting the argument." *Anderton v. Avery Fin. Servs.*, No. 4:10-CV-00392-EJL, 2011 WL 4584979, *5 (D. Idaho Aug. 23, 2011) (citing *Phillips v. Calhoun*, 956 F.2d 949, 953 (10th Cir.1992)); *see also Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point."). "A party's failure to cite legal authority in support of its position 'suggests either that there is no authority to sustain its position or that it expects the court to do its research.'" *Goldberg for Jay Peak, Inc. v. Raymond James Fin., Inc.*, No. 16-21831-CIV, 2017 WL 7791564, *7 (S.D. Fla. Mar. 27, 2017) (quoting *Rapid Transit Lines, Inc. v. Wichita Developers, Inc.*, 435 F.2d 850, 852 (10th Cir. 1970)). Yet "it is not the responsibility of the Court to conduct the legal research for the parties," and the Court declines to do so here. *Env't Furniture Inc. v.*

*Bina*, No. CV 09-7978 PSG (JCX), 2010 WL 11549403, *9 (C.D. Cal. Aug. 10, 2010).[2] The Parties in this case are on notice that any legal argument made before the Court must be supported by legal authority and proper citation.

Because Defendants arguments are conclusory, utterly ignore the specific factual allegations in the Complaint, and fail to cite legal authority, the Court DENIES Defendants' motions to dismiss. (Dkt. Nos. 34 and 40.)

### C. Plaintiff's Motion to Dismiss Defendants' Counterclaims

Defendants bring two counterclaims: defamation and abuse of process. (Dkt. No. 35 at 17–19.) Defendants' defamation claim asserts:

> The Plaintiffs, in their Complaint, allege that the Defendants engaged in acts of violence, theft, vandalism, and property damage at the Eritrean Festival in Tacoma, Washington, on August 5, 2023. These allegations are false. The Plaintiffs published these false statements to third parties through the filing of their lawsuit, causing harm to the Defendants' reputations . . . . The plaintiff published the defamatory statements by filing the lawsuit, making the allegations public record and accessible to third parties. The plaintiff lacked privilege to publish these defamatory remarks. As a result of the Plaintiff's defamatory statements, the Represented Defendants have suffered harm to their reputations, emotional distress, and incurred legal costs defending against the baseless claims.

(*Id*. at 18.) In their motion to dismiss, Plaintiff argues that the allegations in the Complaint are privileged, as "the Washington Supreme Court [has] established an absolute privilege for pleadings and statements made during the course of judicial proceedings." (Dkt. No. 43 at 13)

---

[2] If Defendants believe that "Plaintiff's Complaint fails to allege facts demonstrating that the named Defendants actions exceeded the bounds of protected speech," they must direct the Court to authority supporting this proposition. (Dkt. No. 34 at 5.) Defendants fail to identify the "bounds of protected speech" and fail to place Defendants actions, taken as true, in relationship to those bounds. Likewise, Defendants fail to engage with the specific factual allegations in the Complaint and fail to explain why the allegations are allegedly insufficient. While Defendants state that Plaintiffs fail to "allege sufficient facts to support the essential elements of each claim," Defendants fail to identify for the Court *what* the elements of each claim are by citing caselaw that lays out the relevant legal standard. (*Id*. at 6.)

(citing *State v. Wilson*, 241 P. 970 (1925)).  It is "hornbook law," Plaintiff states, that "a defense of absolute privilege will defeat a claim for defamation." (*Id*.)  Since Defendants' defamation counterclaim is based on alleged false statements *in* Plaintiff's Complaint, the counterclaim must be dismissed with prejudice, Plaintiff concludes.  (*Id*. at 13–14.)  Plaintiff responds that "[t]he privilege should not extend to statements made with actual malice." (Dkt. No. 37 at 3.)

"A defamation plaintiff must prove four essential elements: (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages." *Demopolis v. Peoples Nat. Bank of Washington*, 796 P.2d 426, 428 (Wash. Ct. App. 1990).  "An absolute privilege protects the maker of an otherwise defamatory communication from all liability for libel or slander." *Id*. at 429.  "Allegedly libelous statements, spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged if they are pertinent or material to the redress or relief sought, whether or not the statements are legally sufficient to obtain that relief." *McNeal v. Allen*, 621 P.2d 1285, 1286 (Wash. 1980).  The factual allegations in Plaintiff's Complaint, which form the base of Plaintiff's defamation counterclaim, are therefore privileged.  "The defense of absolute privilege or immunity avoids all liability." *Id*.  Accordingly, Plaintiff's counterclaim for defamation is DISMISSED.[3]

Plaintiff's second counterclaim alleges:

---

[3] Defendant argues that the allegations in the Complaint are "demonstrably false and intended to paint Defendants in a negative light." (Dkt. No. 47 at 3.)  Defendant further asserts that "Plaintiff's transparent motive to intimidate and use legal process as a sword and a shield to maliciously damage the reputation of these defendants is not pertinent and material to the pursuit of any legitimate legal claim, but instead an attempt to create cognizable claims by manipulating their absolute privilege." (*Id*. at 4.)  Whether the allegations in the Complaint are false is a question of fact not currently before the Court.  If Defendants are correct that the allegations are false, the Defendants will prevail through the legal process. If Defendants are correct that Plaintiff *knew* the allegations were false and brought them to harass Defendant, Plaintiff will be found in violation of Rule 11 and sanctioned accordingly. *See* Fed. R. Civ. P. 11(b)–(c).

> The Plaintiffs filed this lawsuit for the improper purpose of harassing and intimidating the Defendants and chilling their First Amendment rights. The lawsuit is politically motivated and seeks to silence the Defendants' criticism of the Eritrean government. The Plaintiff's allegations are baseless and lack factual support . . . . Plaintiff's act of filing a lawsuit containing baseless allegations of violence, theft, and vandalism in order to silence constitutionally-protected political speech constitutes an improper use of legal process.

(Dkt. No. 35 at 19.) Under Washington law, "[t]he two essential elements for 'abuse of process' are (1) the existence of an ulterior purpose—to accomplish an object not within the proper scope of the process—and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings. The mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process." *Fite v. Lee*, 521 P.2d 964, 968 (1974) (citing *Ammons v. Jet Credit Sales, Inc.*, 181 N.E.2d 601, 603 (Wash. 1962). Accordingly, "the proper test for abuse of process is whether the process has been used to accomplish some unlawful end, or to compel the adverse party to do some collateral thing which he could not legally be compelled to do." *Id*. "[T]he gist of the action is the misuse or misapplication of the process, after it has once been issued, for an end other than that which it was designed to accomplish. In other words, the action requires a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 82 P.3d 1199, 1217 (Wash. Ct. App. 2004); *see also Batten v. Abrams*, 626 P.2d 984, 989 (Wash. Ct. App. 1981) ("Some definite act or objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as

the surrender of property or the payment of money, by the use of the process as a threat or a club.").

Here, as in *Loeffelholz*, there has been the institution of a legal proceeding but there is no indication of improper actions *following* the issuance of process. *See id*. Defendants allege malicious motive in instituting the legal proceeding, but that "does not constitute an abuse of process." *Fite,* 521 P.2d at 968; *see also Batten*, 626 P.2d at 989 ("An ulterior motive or a bad intention in using the process is not alone sufficient, the bad intent must have culminated in the abuse, for it is the latter which is the gist of the action."). Defendants, in their response, ignore that malicious motive is not an element of the tort, instead doubling down on the argument that the "crux" of the abuse of process claim is "the *ulterior purpose* behind it." (Dkt. No. 47 at 5) (emphasis in original). Defendants continue that "[i]f these allegations are indeed baseless and intended to silence Defendants, then the lawsuit, regardless of any claimed damages, constitutes an abuse of process." (*Id*.)  Not so.  If the allegations are baseless, the Defendants will prevail in this suit: this is how our justice system functions. Moreover, should Defendants successfully demonstrate that the allegations are indeed baseless, that Plaintiff *knew* they were baseless, and that the purpose of the lawsuit was harassment, Rule 11 provides a mechanism for sanctions. *See* Fed. R. Civ. P. 11(b)–(c).[4]  Defendant's crossclaim for abuse of process is DISMISSED.

---

[4] Rule 11(b)–(b)(1) provides that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Rule 11(c)(1) provides that if the Court determines that Rule 11(b) has been violated, it may impose an appropriate sanction on any attorney, law firm, or party that violated the rule.  A party may also bring a motion for sanctions describing the specific conduct that allegedly violates Rule 11(b). *See* Fed. R. Civ. P. 11(c)(2).  The Court observes that Defendant's crossclaim sounds in the register of Rule 11(b), which may be the appropriate procedural mechanism to redress Defendants' grievances, should they have factual support.

### IV   CONCLUSION

Accordingly, Defendants' motions to dismiss (Dkts. No. 34 and 40) are DENIED. Plaintiff's motion to dismiss is GRANTED.  (Dkt. No. 43.)

Dated this 27th day of January, 2025.



David G. Estudillo
United States District Judge