UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERITREAN ASSOCIATION OF GREATER SEATTLE,<br><br>Plaintiff,<br><br>v.<br><br>HENOCK TECKLE GEBREKIDAN et al.,<br><br>Defendant. | CASE NO. 3:24-cv-05517-DGE<br><br>ORDER ON MOTION TO QUASH NON-PARTY SUBPOENA (DKT. NO. 80) |

## I   INTRODUCTION

This matter comes before the Court on Defendants' motion to quash the non-party subpoena of Dawit Gebregiorgis. (Dkt. No. 80.) Plaintiff Eritrean Association in Greater Seattle ("EAGS") opposes this motion. (Dkt. No. 87.) For the reasons set forth herein, the motion is DENIED.

## II   BACKGROUND

The current dispute in this lawsuit arises out of a nonparty subpoena served on Dawit Gebregiorgis. (Dkt. No. 80-2.) Plaintiff ordered Gebregiorgis to appear at a deposition

scheduled for September 9, 2025, and sought production of "[a]ll texts and correspondence with the Defendants, downloads for your social media account chats and profile information, all documents related to Brigade Nhamedu and bank statements for all transactions the month before and after the Aug. 5, 2023 riot." (*Id.* at 2.)

Defendants moved to quash the subpoena, arguing they have standing to challenge the subpoena because of a "common interest privilege" with Gebregiorgis. (Dkt. No. 80 at 4.) Defendants argue, without much explanation, the "plain language of the production requested establishes that the communications and testimony Plaintiff seeks are privileged according [to] the common interest doctrine as applied to the relevant authority." (*Id.*) This assertion appears to be premised on a declaration from Defendants' counsel stating he "consulted/had privileged communications with Dawit Gebregiorgis for the purposes of his obtaining [counsel's] legal services" and based on these conversations, concluded that "Dawit Gebregiorgis and the named Defendants not only have common legal interest, but identical legal interest." (Dkt. No. 89 at 2.) Rather than provide additional support, Defendants assert it is "abundantly clear" EAGS is subpoenaing Gebregiorgis rather than adding him as a defendant "in order to game this jurisdiction and maintain diversity in this action." (Dkt. No. 80 at 5.) In sum, Defendants' interests and Gebregiorgis's are "so identical" the court might as well join him as a necessary party. (*Id.*) As a result, according to Defendants, the information sought in the nonparty subpoena is privileged. (*Id.*)

### III  DISCUSSION

Federal Rule of Civil Procedure 45 authorizes (and in some instances, requires) courts to quash subpoenas served on nonparties under certain circumstances. Fed. R. Civ. P. 45(d)(3)(A), (B). A court must quash a subpoena if the responding nonparty demonstrates that the subpoena

seeks "privileged or other protected matter," or if responding to the subpoena would subject the nonparty to an "undue burden." *Id.* § 45(d)(3)(A)(iii), (iv).  The party seeking to quash a subpoena has the burden of persuasion under Rule 45(d)(3).  *Pearson v. Cincinnati Ins. Co.*, Case No. 2:24-cv-3370-SB-PDx, 2025 WL 1383910, at *2 (C.D. Cal. Apr. 15, 2025) (citation omitted).

        The Ninth Circuit has not explicitly defined the scope of a party's standing to challenge a nonparty subpoena.  *Pearson*, 2025 WL 1383910, at *2.  However, many district courts in the circuit have determined that a party does not have standing to quash a subpoena served upon a nonparty "'unless the objecting party claims some personal right or privilege with regard to the documents sought.'"  *Anstead v. Va. Mason Med. Ctr.*, Case No. 2:21-cv-00447-JCC, 2023 WL 34505, at *2 (W.D. Wash. Jan. 4, 2023) (citing *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 974 (C.D. Cal. 2010)); *see also Pizzuto v. Tuwalt*, No. 1:21-cv-00359-BLW, 2023 WL 7000825, at *1 (D. Idaho Oct. 24, 2023) (internal citation omitted); *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014); *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148, at *3 (D. Nev. Jan. 9, 2007).

        Conclusory objections and bare assertions of privilege or disclosure of confidential information are insufficient to support a motion to quash.  *Brown v. Sperber-Porter*, No. CV-16-02801-PHX-SRB, 2017 WL 10409840, at *3 (D. Ariz. Nov. 6, 2017).  Accordingly, the party seeking to quash a nonparty subpoena must provide some level of specificity or evidence in support of its motion.  *See Glass Egg Digit. Media v. Gameloft, Inc.*, Case No. 17-cv-04165-MMC (RMI), 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019) (ordering the parties to confer

1  because they had not "identified the exact nature of their claims of personal right or privilege
2  with respect to the documents requested by the subpoenas").

3  The common interest privilege is a "long-recognized extension of the traditional common
4  law doctrine of attorney-client privilege." *Chandola v. Seattle Hous. Auth.*, 2:13-cv-0057-RSM,
5  Dkt. No. 101 at 13 (W.D. Wash. 2014) (citing *Cont'l Oil Co. v. United States*, 330 F.2d 347, 350
6  (9th Cir. 1964)). Courts have extended the rule to "cover communications in joint meetings
7  among clients and their respective attorneys . . . where litigation has not yet been commenced."
8  *Id.* (citing *Hunydee v. United States*, 355 F.2d 183, 184–185 (9th Cir. 1965)). The agreement to
9  pursue a joint strategy may be implied from conduct, "such as attorneys exchanging confidential
10 communications from clients who are or potentially may be codefendants or have common
11 interest in litigation." *United States v. Gonzalez,* 669 F.3d 974 (9th Cir. 2012). However, it is
12 not sufficient that parties possess a "shared desire to see the same outcome in a legal matter";
13 rather, they must make the communication in pursuit of a joint strategy. *In re Pac. Pictures*
14 *Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012); *see also Cal. Sportfishing Prot. All.*, 299 F.R.D. at
15 647 (holding there was a common interest between two parties where they were both engaged in
16 environmental impact litigation based on closely related facts that concerned the same property
17 and brought their suits "against a common adversary").

18 Here, the Court concludes Defendants lack standing to seek to quash the nonparty
19 subpoena. Defendants assert the common interest privilege "creates the necessary standing for
20 Defendants to bring the present Motion." (Dkt. No. 80 at 4.) They appear to argue that because
21 the subpoena seeks communications between Gebregiorgis and the named Defendants, and
22 because Gebregiorgis has "identical legal interest[s]" to the identified defendants, the common
23 interest privilege is automatically triggered. (Dkt. Nos. 80-2 at 2; 89 at 2.) But aside from
24

unspecific conversations Defendants' attorney apparently had with Gebregiorgis (*see* Dkt. No. 89 at 2), Defendants have provided no details or explanation as to how or why the common interest privilege applies to the documents sought in the subpoena. The subpoena seeks texts and correspondence between Gebregiorgis and the Defendants, documents related to Gebrogiorgis's social media, documents related to "Brigade Nhamedu," and his bank statements. (Dkt. No. 80-2 at 2.) None of these documents appear related to communications between Gebregiorgis and Defendants' attorney.

Notwithstanding, Defendants' counsel concludes that based on his conversations with Gebregiorgis, "it's obvious to me that Dawit Gebregiorgis and the named Defendants not only have common legal interest, but identical legal interest." (*Id.*) But having a "shared desire to see the same outcome in a legal matter" is not enough on its own to establish common interest privilege. *Pac. Pictures Corp.*, 679 F.3d at 1129. Without more than a "bare assertion of privilege," *Brown*, 2017 WL 10409840, at *3, these generalized statements are not sufficient to "displace the general rule" that parties lack standing to challenge nonparty subpoenas. *Pizzuto*, 2023 WL 7000825, at *2.

Even assuming Defendants have standing to challenge the nonparty subpoena, they do not cite to any case law—nor is the Court aware of any—that stands for the proposition that the common interest doctrine protects the communications between a nonparty and named parties who are not attorneys and who communicate with the nonparty without an attorney present. As discussed above, the common interest doctrine is "designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *Pac. Pictures Corp.*, 679 F.3d at 1129. To the degree Defendants' counsel had discussions with Gebregiorgis about potential legal issues, made representations about the case, or provided legal advice, those

conversations would be protected by the attorney-client privilege. *Bolding v. Banner Bank*, Case No. 2:17-cv-00601-RSL, Dkt. No. 342 at 4 (W.D. Wash. 2021) ("[c]ommunications from prospective clients . . . are generally covered by the attorney-client privilege, even if the attorney is not ultimately retained") (citing *Barton v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 410 F.3d 1104, 1111–1112 (9th Cir. 2005). But it does not appear that such information is being requested by the subject subpoena. Here, the attorney client privilege (or the common interest privilege, for that matter) cannot be used to shield communications between Defendants and Gebregiorgis, an unrepresented nonparty, merely because Defendants and Gebregiorgis share a general interest in the outcome of this litigation.

## IV  CONCLUSION

Accordingly, the Court DENIES Defendants' motion to quash the nonparty subpoena of Dawit Gebregiorgis.

Dated this 10th day of September 2025.

David G. Estudillo
United States District Judge