THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERITREAN ASSOCIATION OF
GREATER SEATTLE,

                Plaintiff,

    v.

HENOCK TECKLE GEBREKIDAN et al.,

                Defendants.

CASE NO. 3:24-cv-05517-DGE

DEFENDANTS' FED. R. EVID. 702/*DAUBERT* MOTION TO EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S EXPERTS DANIEL C. QUINTERO AND JOE ESSA

NOTE ON MOTION CALENDAR: APRIL 29, 2026

ORAL ARGUMENT REQUESTED

## I.    **INTRODUCTION**

Defendants move under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude the testimony of Plaintiff's designated experts, Daniel C. Quintero and Joe Essa. As disclosed, neither expert tie opinions to reliable, testable methodologies applied to the case-specific facts, both omit foundational disclosures required by Fed. R. Civ. P. 26(a)(2)(B), and both include major misstatements or completely unsupported speculations.  This Court should exclude their testimony in whole, or, at a

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO
EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S
EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 1

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

minimum, exclude specific unsupported categories and topics, with a focused Daubert hearing if any portion is not excluded.

## II.   BACKGROUND FACTS

### A.  Plaintiff's Designations

Plaintiff has designated Joe Essa and Daniel C. Quintero as expert witnesses to support claims related to food safety and economic damages arising from the August 2023 Eritrean festival incident.

### B.  Summary of Record for Mr. Essa

Mr. Essa is identified as a seasoned hospitality executive; his materials reflect extensive operational leadership and board roles rather than scientific research training or peer-reviewed scholarship. His resume and bio list no peer-reviewed publications or scholarly works within the last 10 years. Exhibit 2 Essa Resume. Plaintiff has not identified any deposition or trial testimony by Mr. Essa within the last four years in their Fed. R. Civ. P. 26 disclosure or his CV/bio. *See Id*.

### C.  Summary of Record for Mr. Quintero

Mr. Quintero's report outlines categories of economic loss but does not identify any recognized or validated economic model underlying the calculations. Exhibit 4 Quintero Report. Mr. Quintero's CV and Fed. R. Civ. P. 26 materials list no peer-reviewed publications within the last decade supporting his damages methodology. *See* Exhibit 1 Quintero Resume; Exhibit 4 Quintero Report. Within the last four years, Plaintiff identifies only one retained-expert matter in San Francisco Superior Court. Exhibit 5 email from Todd Wyatt. The report lists materials reviewed (e.g., financial records, contracts, insurance, communications, media, police/security), but it does not provide transparent calculations,

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 2

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

include underlying data, or tie the categories to an accepted econometric or valuation framework. Exhibit 4 Quintero Report.

### III.    **LEGAL STANDARD**

Under Fed. R. Evid. 702, expert testimony is admissible only if it meets specific criteria. The expert must be qualified by knowledge, skill, experience, training, or education, and their specialized knowledge must be likely to help the trier of fact to understand the evidence or determine a factual issue. Fed. R. Evid. 702(a). The testimony must be based on sufficient facts or data, be the product of reliable principles and methods, and reliably apply these principles and methods to the facts of the case. Fed. R. Evid. 702(b)-(d). The proponent of the expert testimony bears the burden to establish these criteria by a preponderance of the evidence.  Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment.

The expert must provide a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

FRCP 26(a)(2)(B).

The *Daubert* standard, established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), requires the court to act as a gatekeeper to ensure that any expert testimony or evidence admitted is not only relevant, but also reliable.  *Daubert*, 509 U.S. at 589; *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 147 (1999) (applying *Daubert*

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 3

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

standard to all expert testimony, not just scientific testimony). In determining whether the proposed expert testimony rests on valid reasoning which can properly be applied to the facts of the case, relevant questions may be whether the expert relies on a testable methodology, whether the methodology has been subjected to peer review and publication, the potential rate of error, and whether the methodology is generally accepted in the relevant community. *Daubert*, 509 U.S. at 592-94.

The exact criteria used will depend on the case, and it is ultimately up to the trial court to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152.

## IV.     ARUGMENT

**A. Daniel C. Quintero is not a qualified expert under Fed. R. Evid 702, his testimony does not apply specialized knowledge to the facts of the case and would not be helpful to the jury, and his report does not meet the requirements of Fed. R. Civ. P. 26.**

### 1. *Qualifications and recent testimony*

Mr. Quintero's report identifies him as an "econometric litigation strategist and expert damages valuator for class action lawsuits and complex litigation matters." Exhibit 4 Quintero Report. Mr. Quintero's primary experience over the last two decades is as a partner of venture capital funds, and he also worked at plaintiff's counsel Eduardo Roy's law firm (Prometheus Partners) as Chief Economist and Head of Business Advisory Services. *See* Exhibit 1 Quintero Resume. His resume lists no peer-reviewed publications in the past 10 years. *Id*. His resume lists 4 cases in which he was retained as an expert but with no information as to when these cases took place, as required by Fed. R. Civ. P. 26(a)(2)(B)(v). *Id.* Counsel later represented that Mr. Quintero has testified in one case in the last four years

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO
EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S
EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 4

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

and identified a case that was not listed on Mr. Quintero's resume.  Exhibit 5 Email from Todd Wyatt.

**2. *Quintero's report is devoid of any discernable methodology, underlying data are conspicuously absent, and plaintiff cannot show that Quintero's testimony would be reliable or helpful to the juror.***

Mr. Quintero's report consists almost entirely of bald assertions of quantified damages unsupported by underlying data, and with no description of the methodology used to reach these numbers. "Experts must follow some discernable methodology, and may not be a black box into which data is fed at one end and from which an answer emerges at the other." *NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-CV-01503-JHC, 2023 WL 3933877, at 2 (W.D. Wash. June 8, 2023) (quoting *NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 1274985, at 2 (N.D. Cal. Mar. 17, 2020)) (excluding expert whose "report provides no meaningful explanation of how she arrived at … figures aside from her conversations with" an employee of the retaining party).

The report enumerates reviewed materials but fails to identify any recognized, validated economic model or framework tied to accepted principles, and it does not provide transparent calculations or data linkages for the damages figures. These omissions go to Fed. R. Evid. 702(b)–(d): insufficient facts/data; no reliable principles/methods; and no reliable application to the facts. *See* Exhibit 4 Quintero Report.

a. *Ticketing revenue*

The report presents ticketing losses of "$530,122 based on expected total attendance of 13,508."  Exhibit 4 at 2.  Mr. Quintero claims to have based this attendance number on "benchmark data from Eritrean festivals hosted in Washington D.C., Dallas, and historical attendance data from the Seattle Eritrean Independence Day event" as well as "US Census

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO
EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S
EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 5

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

and community estimates of Eritrean population." *Id.* None of these data are enumerated, nor are they attached as exhibits to Mr. Quintero's report. Mr. Quintero's report does not discuss the reasonableness of this forecasted attendance.

Nor does Mr. Quintero's report link the apparently decreased sales to the actions of defendants. Mr. Quintero's report purports to discuss "the damages caused by the riot at the Eritrean Festival Grounds on August 5, 2023" but does not examine how ticket sales were performing relative to the forecast before August 5. Exhibit 4 Quintero Report, at pp. 1-2. It does not discuss any other factors whatsoever that may have contributed to lower ticket sales than forecasted, but instead appears to attribute all losses, presumably *including those on the first day of the festival*, to the "riot" on the second day of the festival. EAGS "must show existence of lost profits with 'reasonable certainty' not 'speculation or guesswork.'" *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1254 (S.D. Cal. 2013) (quoting *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir.1996)).

Because Mr. Quintero makes no showing of how he is applying any specialized knowledge to reach these numbers, the numbers are not based on any provided data and appear inflated, and there is no discussion of the correlation between the events at issue and the proffered numbers, Mr. Quintero's testimony on this issue should be excluded.

b. *Other "Lost Revenue"*

Mr. Quintero's report goes on to list losses in the categories of food and beverage service; spirit sales; merchandise; vendor tent sales; and advertising, sponsorship, and raffles. These calculations are similarly opaque—it is not clear whether these numbers were reached by Mr. Quintero or provided to him by EAGS. There is no transparency as to how these numbers were calculated, no tabulation of the underlying data they are based on, nor

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO
EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S
EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 6

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

information as to how or whether they were limited to those losses purported to be caused by Defendants.  The underlying data again are not attached as an exhibit to Mr. Quintero's report.

Food and beverage losses are listed without any step-by-step calculations connecting records to net lost profit or any descriptions of methodology. Exhibit 4 at 2.  Mr. Quintero's report seems to quantify spirit sales twice, both as its own category and in food and beverage service. *Id.* These losses are all described in service of the report's stated goal to describe damages from the events of August 5th, even though multiple of these apparent "losses" occurred before this day: notably, the organizers securing less advertisement and renting fewer tents than apparently forecasted, as well as deciding to not sell spirits.  Mr. Quintero makes sweeping assertions about what the revenue would have been without providing any information about how he is reaching these conclusions.  Such a black box is untestable, unreliable, and unhelpful to the jury.

c. *Unplanned Expenses*

Quintero's report similarly provides numbers for unplanned expenses without any data or methodology apparent.  It seems that these numbers do not reflect any analysis but simply restate numbers provided by EAGS.  There is no attempt to discuss the reasonableness of EAGS's responsibility for the stated medical expenses of third parties, or the correlation between these specific Defendants' actions and the organizers' decision to increase security presence. Any specialized knowledge that Mr. Quintero may have would not appear to be helpful to the trier of fact in this case because he is not applying it to the facts at hand.

//

//

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO
EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S
EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 7

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

### d. Cancelled or Impaired Future Events

Quintero asserts that "[p]rojected losses extend to at least four future events." Quintero does not explain how he arrived at the number four. This is another black box of untestable analysis which should be excluded.

### e. Security Upgrade and Emergency Response Costs

Quintero asserts that EAGS's security upgrade cost $498,002. There is no discussion of whether this is a reasonable cost, what the breakdown of costs are, or whether these costs were undertaken before or after the events which Quintero's report purportedly concerns.

### f. Reputational Harm, Community Disengagement and Grant Network Impacts

Quintero's claims are not supported by any evidence, let alone any evidence linking the apparent losses to the actions of defendants. These broad sweeping claims lack any foundation, are not testable, are not based on any known principles, and should be excluded.

### g. Impairment of Growth Plans

Quintero claims but does not provide any explanation or support via an exhibit that any actions of defendants, or the protest on August 5, are related to the project delays or deferrals he identifies.

### h. Third-Party Interference and Retaliatory Conduct

Quintero's assertions with respect to the impacts of allegations of sanctions violations are unfounded and irrelevant to the August 5 protest. Quintero does not explain the basis for his opinion that allegations of sanctions violations are false, nor does his resume qualify him to testify to such an opinion.

### i. Reputational and Relationship Repair Costs

Quintero's opinions regarding the costs of reputation repair are necessarily based on his previous unsubstantiated claims regarding the impact on EAGS's reputation. His opinions about the costs of this "repair" are incomplete and conclusory. He does not discuss the impact

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO
EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S
EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 8

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

of the apparent impact to EAGS's reputation, the amount of this impact that he attributes to defendants versus other causes, or the reasonableness of his proposals compared to other alternatives. The incompleteness of his sweeping conclusions mirrors the sweeping nature of the rest of his report.

### 3. Quintero's report appears to be even more unreliable in light of EAGS' brazen assertions of profit and loss.

EAGS did provide in discovery a "Festival Profit and Loss Statement," which many of Mr. Quintero's valuations seem to exactly mirror. [1]Exhibit 7 & 6 EAGS Festival Profit and Loss Statement. Mr. Quintero's quantifications of lost advertising revenue, vendor tent rentals, and vandalized and stolen property all exactly mirror EAGS's claimed losses. Exhibit 7 & 6, p. 1, 4; Exhibit 4, p. 2.

Other quantifications, however, appear to have been arbitrarily adjusted, with no explanation for the deviation from EAGS's own profit and loss statement. For instance, EAGS's statement claimed a forecasted revenue from Food and Beverage Sales of $1,872,000. This was based in part on selling 8,000 adult plates at $90 per plate, 16,000 child food plates at $45 per plate, and 12,000 beverages at $27 per beverage. In addition to not meeting these high goals for volume (with no substantiation having been provided by EAGS or Quintero for the forecast attendance numbers in the first place) EAGS did not actually sell these items at these incredible prices. The actual prices were $15 per adult plate and $3 per beverage. _EAGS's inflation of these prices in its forecast correlates to hundreds of thousands of dollars of "loss" accounted for in its statement._

---

[1] Exhibit 7 true and accurate side-by-side copy of Exhibit 6 Bates Stamps EAGS.Vol1.00322-00327, which allows the viewer to properly view the full form

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO
EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S
EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 9

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

If calculated using EAGS's stated forecast volume and the actual prices, EAGS's food and beverage loss[2] would amount to only $329,940.[3]  This is less than half of Quintero's stated food and beverage loss.  Since there is no explanation of how he reached his estimate, it seems that it must be artificially inflated.

### 4. *Mr. Quintero is not eligible as an expert under Fed R. Civ. P. 26 or Fed. R. Evid. 702.*

The deficiencies throughout Mr. Quintero's report make it clear that his testimony should not be permitted.  His report fails to meet the requirements of Fed R. Civ. P. 26(a)(2)(B), as it is incomplete, fails to include the relevant facts, data, and exhibits that underpin his decisions, and he is therefore not qualified.[4]  His testimony is based on inscrutable and unknown data in violation of Fed. R. Evid. 702(b), is the product of unknown or entirely absent methodology in violation of Fed. R. Evid. 702(c), and does not appear to apply any principles reliably to the facts of the case in violation of Fed. R. Evid. 702(d).  For these reasons, and because his report consists entirely of speculative assertions, any specialized knowledge that Mr. Quintero possesses will not be helpful to the trier of fact, in violation of Fed. R. Evid. 702(a), and will only serve to confuse the issues or outright unduly prejudice Defendants.

Defendants therefore respectfully request exclusion of Mr. Quintero's opinions in full. In the alternative, any damages opinions not supported by a disclosed, recognized model with transparent calculations and consideration of any obvious alternative factors should be

---

[2] Excluding spirit sales, which Quintero purportedly accounts for separately.

[3] Forecast sales of $396,000 (24,000 plates at $15, 12,000 beverages at $3), actual sales of $66,060 (2,392 plates at $15, 10,060 beverages at $3).

[4] His report is also devoid of a statement of the compensation to be paid for his services, in violation of FRCP 26(a)(2)(B)(vi).

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 10

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

excluded, and, if any portion is not excluded, a focused Daubert hearing limited to methodology, model identification, data linkages, and calculation transparency should be held.

**B. Joe Essa is not a qualified expert on Washington food safety and bases his report on falsified citations to Washington regulations.**

*1. Mr. Essa is not a qualified expert on Washington State food safety requirements.*

Mr. Essa's background materials reflect hospitality operations leadership and board roles. Exhibit 2 Essa Resume.  Mr. Essa has no scientific or testimonial background.  Exhibit 2, Exhibit 5.  Notably, Mr. Essa does not claim to have any specific knowledge regarding Washington State food regulations or make any claims that his experience is applicable to Washington State.

*2. Mr. Essa's citations to Washington State regulations are blatantly incorrect.*

Mr. Essa's report cites 5 WAC provisions, describing them as follows:

- WAC 246-215-03400(1): Food must be protected from contamination during storage, preparation, and display.
- WAC 246-215-03425: Requires physical barriers and controls to prevent environmental, human contamination and unauthorized access.
- WAC 246-215-08305: Mandates immediate corrective action when contamination or imminent health hazards are identified.
- WAC 246-215-08310: Requires cessation of operations when food safety is compromised due to environmental hazards or facility damage.
- WAC 246-215-08315: Specifies that operations may resume only after hazards are eliminated and sanitation is verified.

Exhibit 3 Essa Report at p. 3.

Every one of these citations is fabricated—or more likely—the product of an AI hallucinations that were not properly shepardized.

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO
EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S
EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 11

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

WAC 246-215-03400(1) concerns the temperature to which raw animal foods must be cooked.

WAC 246-215-03425 concerns freezing fish for parasite destruction.

WAC 246-215-08305 addresses when a person may be exempt from requiring a food establishment permit by applying to the regulatory authority.

WAC 246-215-08310 addresses the timing for submitting a permit application for a new food establishment.

WAC 246-215-08315 requires the permit application to be submitted on a form provided by the regulatory authority. Furthermore, Essa's citation to FDA Food Code 3-302.15 summarizes the section as "Protection of food from unauthorized access and environmental exposure." But this section is titled "Washing Fruits and Vegetables" and does not address "unauthorized access."

Mr. Essa's blatant fabrication of Washington food safety law firmly establishes him as an unreliable source of information, which makes him definitively unhelpful to the trier of fact. Because his "expert" opinions will be based on fabricated standards, it makes his testimony unduly prejudicial to Defendants.

Mr. Essa continues in his report to rely on these fabrications for further conclusions. For instance, Mr. Essa claims that "the trespass into food preparation areas by vandals was incompatible with food safety law, which mandates strict contamination controls following unauthorized access to food zones." Exhibit 3 – Essa Report at p. 3. Again, all of the regulations that Mr. Essa cites concerning "unauthorized access" are fabricated.

//

//

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 12

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

### 3.  Mr. Essa's report is not supported by underlying facts or data.

Mr. Essa's report lists the following exhibits which were not included with his report, in contravention of Fed. R. Civ. P. 26(a)(2)(B)(iii): Exhibit B: Food Safety Risk Matrix for Riot-Affected Zones; Exhibit C: Regulatory Protocols Triggered by Unauthorized Entry; Exhibit D: Chemical Contaminant Profiles: Pepper Spray and Shotgun Residue; Exhibit E: Fire Alarm Disruption Hazards and Emergency Protocols.  The failure to include this information makes his assertions untestable and makes all relevant opinions inadmissible under Fed. R. Evid. 702.

### 4.  Mr. Essa is not eligible as an expert under the rules of evidence.

Fed. R. Evid. 702 mandates that an expert can only be permitted to testify if the proponent demonstrates that the expert's testimony is based on sufficient facts or data and dependably applies reliable principles to the facts.  Mr. Essa is not an expert on Washington food safety requirements and based large swaths of his report on concocted, unshepardized AI hallucinations, and/or falsified citations to the Washington Administrative Code.  His testimony should be excluded in whole. In the alternative, this Court should hold a focused *Daubert* hearing and if any testimony is permitted, it should be limited to non-scientific operational practices.

## V.    CONCLUSION

For the reasons set forth, Defendants respectfully request that the Court exclude the testimony of Plaintiff's expert witnesses, Joe Essa and Daniel C. Quintero.  Allowing such speculative, unsupported, and fabricated testimony would mislead the jury and undermine the integrity of the trial process. Therefore, Defendants urge the Court to exclude their testimony in its entirety or, at a minimum, conduct a focused Daubert hearing to assess the admissibility

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO
EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S
EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 13

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

of their opinions. This action is necessary to ensure that only reliable evidence is presented to the jury.

I certify that this memorandum contains 3,696 words, in compliance with the Local Civil Rules.

Respectfully submitted,

Dated: May, 6, 2026

**STOCKWELL LAW FIRM PLLC**
By:    */s/ Christopher J. Stockwell*
        Christopher J. Stockwell
        WSBA #50001
        Attorney for Named Defendants
        3300 E Union Street, Suite 108
        Seattle, WA 98122
        (206) 929-3111
        chris@stockwelllawfirm.com

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO
EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S
EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 14

Stockwell Law Firm PLLC
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2026, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the

following:

☒    Eduardo G Roy
PROMETHEUS PARTNERS LLP
1950 BROADWAY
STE 3011
OAKLAND, CA 94612
415-527-0255 Email: eduardo.roy@prometheus-law.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

☒    **Todd W Wyatt**
WYATT GRONSKI PLLC
371 NE GILMAN BLVD
SUITE 260
ISSAQUAH, WA 98207
425-395-7784
Fax: 425-837-5396
Email: todd@wdlawgroup.com
*ATTORNEY TO BE NOTICED*

DATED this 6th day of May 2026.

By: */s/ Christopher J. Stockwell*
Christopher J. Stockwell
Stockwell Law Firm PLLC
WSBA # 50001
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111
chris@stockwelllawfirm.com
Attorney for Named Defendants:

DEFENDANTS' FED. R. EVID. 702/DAUBERT MOTION TO
EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S
EXPERTS DANIEL C. QUINTERO AND JOE ESSA – 15

**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111