UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERITREAN ASSOCIATION IN GREATER SEATTLE,<br>Plaintiff,<br>v.<br>HENOCK TECKLE GEBREKIDAN et al.,<br>Defendants. | CASE NO. 3:24-cv-05517-DGE<br><br>ORDER ON PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 179) |

Before the Court is a partial motion for summary judgment filed by Plaintiff Eritrean Association in Greater Seattle ("EAGS"). (Dkt. No. 179.) Defendants oppose this motion. (Dkt. No. 198.) For the reasons that follow, Plaintiff's motion is DENIED in full.

## I FACTUAL AND PROCEDURAL BACKGROUND

### A. August 2023 Eritrean Festival

EAGS is the "largest Eritrean-American community organization in the Pacific Northwest." (Dkt. No. 180 at 2.) Its primary means of fundraising is through Eritrean themed festival events which raise money to "support community services for Eritrean immigrants and

refugees in the Greater Seattle area, including language classes, immigration assistance, health outreach, and cultural programming." (*Id.*) The events giving rise to this lawsuit arose at one such community event in 2023.

EAGS coordinated with the city of Tacoma, Washington to plan its 49th annual festival, scheduled for August 4–6, 2023. (*Id.* at 3.) EAGS rented the Tacoma Convention Center for the duration of the festival. (*Id.*) The city of Tacoma issued a Special Event Permit ("SEP") to EAGS, which permitted it to "close off public access" to South Market Street, between South 15th Street and South 17th Street, adjacent to the convention center. (*Id.*; Dkt. Nos. 180-1 at 1–2; 180-2 at 1–2.) The permit was authorized from Friday, August 4, 2023, at 12:00 P.M. through Monday, August 7, 2023 at 6:00 A.M. (Dkt. No. 180-1 at 1.) As a "condition precedent" to being issued the permit, EAGS was required to submit a Traffic Control Plan ("TCP") for approval by the city; the permit was reviewed and approved by the Tacoma Police Department, the Traffic Engineering Division, and the Tacoma Fire Department on July 20, 2023. (Dkt. No. 180 at 3; 180-1 at 1.) The TCP shows that a "Type III Barricade" was to be placed on either end of South Market Street, between South 15th Street and South 17th Street, closing off that portion of the street to road traffic. (Dkt. No. 180-2 at 1–2.) The depictions of the Type III Barricades in the TCP show the barriers are not continuous and allow for foot traffic to enter the permitted area. (*Id*. at 1.) The TCP also provides that "ACCESS TO COFFEE SHOP & RESIDENCES WILL BE MAINTAINED THROUGH SIDEWALK CLOSURE[.]" (*Id.*)

Isaac Araya, EAGS's Executive Director, declares that EAGS "always intended for the permitted area to remain under its exclusive control and the public to follow the traffic control plans within [two] blocks, such that EAGS could charge attendees for admission and its exhibitors for tent space." (Dkt. No. 180 at 4.) According to Araya, under the terms of the

permit, "only EAGS-approved staff, security personnel, and ticketed guests who completed security screening" were authorized to enter the festival areas (i.e., the convention center and the closure on South Market Street) during the festival. (*Id.*) EAGS intended that non-approved individuals were not permitted to enter the festival area. (*Id.*) To accomplish this, EAGS apparently "established a five-layer restriction system" as detailed in the TCP, which consisted of cones, reflective structures, six-foot fencing, "ecology blocks," a two-block perimeter of traffic around the blocked-off street, and access restriction signage. (*Id.*; *see also* Dkt. No. 180-2.) Private security personnel were stationed at entry points to the festival and regional law enforcement "confirmed the boundary of EAGS's exclusively controlled area." (Dkt. No. 180 at 6.)

**B. Protest/Riot on August 5**

The Parties dispute nearly everything about what transpired on the morning of August 5, 2023. According to Plaintiff, Araya observed a group of what he predicts were 150 people marching toward the festival perimeter at around 5:45 A.M., before the festival was set to open at 10:00 A.M. (Dkt. No. 180 at 6, 8.) Araya declares that protesters broke through EAGS's traffic diversion equipment and other blockades to entrance, including a six-foot-tall chain link fence. (*Id.*) According to Plaintiff, the protesters were "armed with metal poles and sticks, tactical gear including backpacks, eye protection, face masks, gloves, sharp objects, and struck EAGS security guards." (*Id.* at 7.) Although private security guards deployed pepper spray, riot shotgun rounds, and "repeated vehement requests" to leave the area, the protesters "kept advancing." (*Id.*) They destroyed "vendor tents, merchandise stations, and food service equipment." (*Id.*) Araya declares that as a "direct result" of the protest, all food operations at the festival had to be canceled and all food products had to be discarded. (*Id.*) Five attendees

required emergency medical attention, and the festival was suspended for the majority of the day, "causing EAGS to lose [f]estival revenues including ticket sales, food and beverage income, and vendor income from 37 vendors." (*Id.*) Plaintiff submitted a variety of video clips that show a large group of people in teal t-shirts, some of whom are Defendants, entering the festival area and in the chaos that followed, knocking over and slashing vendor tents, trampling merchandise, and engaging in altercations with security and law enforcement. (*See* Dkt. No. 178.)

Defendants are thirteen "activists, political protesters, and journalists" that are part of the Eritrean diaspora. (Dkt. Nos. 198 at 4; 203 at 1.) They state they attended the festival in 2023 to protest and raise awareness about the abuses of the Eritrean government. (Dkt. Nos. 200 at 1; 205 at 1.) Several Defendants assert their belief that the festival was a "cover" for the "hate and war mongering promoting the war in the Region of Tigray[]" and believed the festival was a "tool for transnational repression and a mechanism to fund the regime's harmful activities." (*E.g.*, Dkt. Nos. 201 at 1; 202 at 1; 203 at 1.) According to Defendants, the protest was intended to be peaceful. (Dkt. No. 205 at 1.)

**C. Procedural History**

This motion represents the culmination of more than two years of contentious and inexpert litigation between the Parties. Plaintiff first filed suit on June 27, 2024 (*see* Dkt. No. 1) and the Court entered its first scheduling order on January 10, 2025 (*see* Dkt. No. 53). After a flurry of frivolous motions and a lack of progress in discovery, the Court reset the trial and pretrial dates and on September 23, 2025. (Dkt. No. 105.) The Court closely monitored the Parties' progress through the discovery period and reset the dispositive motion deadline on March 23, 2026. (Dkt. No. 165.) Plaintiff moved for summary judgment on May 22, 2026.

(Dkt. No. 179.) It requests the Court grant summary judgment on two claims: trespass and trespass to chattels. (*Id.* at 9–15.) The matter is fully briefed. (Dkt. Nos. 198, 217.)

## II MOTION TO STRIKE

Pursuant to Local Civil Rule 7(g), Defendants filed a surreply requesting the Court strike three new declarations and 94 pages of exhibits attached to Plaintiff's reply. (Dkt. No. 223.) "It is generally improper to attach declarations and other new evidence to a reply brief because doing so deprives the non-moving party of the opportunity to address the evidence." *Muhammad v. Jenkins*, Case No. CV 19-7970 JAK (PVC), 2021 WL 10352945, at *1 (C.D. Cal. Nov. 19, 2021). "[W]hen new evidence or issues are raised on reply, courts have discretion to either strike the reply declarations and portions of the reply brief that present new material or consider the new material after affording the nonmoving party an opportunity to respond." *HDT Bio Corp. v. Emcure Pharms, Ltd.*, Case No. C22-0334JLR, 2022 WL 3018239, at *2 (W.D. Wash. July 29, 2022); *see also Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (citation and alterations omitted) (""[W]here new evidence is presented in a reply . . . the district court should not consider the new evidence without giving the non-movant an opportunity to respond.'"). "Evidence is not 'new,' however, if it is submitted in direct response to evidence or arguments raised in the opposition." *HDT Bio*, 2022 WL 3018239, at *3.

Here, Defendants argue the "bulk" of evidence submitted alongside Plaintiff's reply "is not responsive to new arguments or evidence raised by Defendants" and further, it should have been raised in Plaintiff's initial briefing. (Dkt. No. 223 at 3.) The Court agrees.

Defendants opposed Plaintiff's motion for summary judgment on two primary arguments: First, that Plaintiff did not have possessory or exclusive ownership rights to the public street that was closed to vehicle traffic and therefore could not prevail on a trespass claim; and second, that

Plaintiff did not own or otherwise have standing to bring a trespass to chattels claim against Defendants because many of the items that were apparently destroyed during the protest were owned by third-party vendors. (Dkt. No. 198 at 8–24; *see also* Dkt. No. 223 at 2.) Defendants identify the following exhibits as newly produced and/or unresponsive to their opposition brief:

- "Exhibit A.1 and A.2 – EAGS's ownership/responsibility for the tents"
- "Exhibit B – Brigade N'Hamedu as a terrorist organization"
- "Exhibit C.1 and C.2 – Food Handling WACs"
- "Exhibit D – 911 call by Security"
- "Exhibit E.1–E.8 – Emails sent by Declarants"
- "Exhibit F – Relating to public disclosure request"
- "Exhibit G.1–G.1.4 – Relating to Campfire Coffee and restricted area"
- "Exhibit G.2.1–G.2.4 – Relating to Yonas Woldu"[1]

---

[1] Defendants request Exhibits E.8, G.2.1–G.2.4, and I not be stricken because they are responsive to Defendants' arguments involving Yonas Woldu as a witness of the protest/riot. (Dkt. No. 223 at 3; *see also* Dkt. No. 198 at 6.) But in its reply, Plaintiff moved to strike Woldu's declaration because he was not included in initial and/or Rule 26 disclosures and Plaintiff learned of him in an amended Rule 26 disclosure on June 11, 2026. (Dkt. Nos. 217 at 5, 9 n.3, 14; 220 at 2.) Defendants did not address the alleged late disclosure in their motion to strike. (*See generally* Dkt. No. 223.) Based on what has been presented to the Court, it appears Woldu had not "otherwise been made known to" Plaintiff during the discovery process. Fed. R. Civ. P. 26(e)(1)(A); *accord Fine v. Kan. City Life Ins. Co.*, Case No. 2:22-cv-02071-MWC-PD, 2025 WL 2815490, at *4 (C.D. Cal. May 12, 2025) (explaining that if supplemental witnesses are made known to the complaining party during discovery process or in writing, there is no obligation to provide supplemental or corrective information, "or in any event the initial failure to disclose would be rendered harmless[]"). The Court did not rely on Woldu's declaration in its consideration of Plaintiff's motion for summary judgment. Notwithstanding, because it appears Woldu was not disclosed as a witness during discovery, thereby precluding Plaintiff from taking his deposition or investigating his claimed knowledge of the events underlying this case (*see* Dkt. No. 220 at 2), Plaintiff's motion to strike Woldu's declaration (Dkt. No. 211) is GRANTED.

- "Exhibit H.1 – emails regarding TCP, H.2 – emails with Tacoma Convention Center event manager regarding event planning (Not previously produced)"
- "Exhibit I – Declaration of Yonas Woldu"
- "Exhibit J – Declaration of Mr. Beyene, translating defendants' statements"

(Dkt. No. 223 at 2.) To the extent this evidence is necessary for Plaintiff's prima facie case, it should have been included in Plaintiff's original motion for summary judgment. *E.g.*, *Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1208, 1214 (W.D. Wash. 2003) (striking new arguments and supporting evidence raised in the defendants' reply brief in part because the defendants provided no reason why the arguments could not have been raised earlier). Otherwise, Defendants do not have an adequate opportunity to respond. *Muhammad*, 2021 WL 10352945, at *1.

Upon the Court's review, the only new evidence that has a colorable claim of being responsive to Defendants' opposition brief is the exhibits "relating to Campfire Coffee and restricted area[.]" (Dkt. No. 223 at 2.) Defendants opposed Plaintiff's trespass claim, arguing that Plaintiff had not shown it had exclusive control over the festival area. (Dkt. No. 198 at 8–11.) Plaintiff's new evidence appears to show that Campfire Coffee—which was identified in the TCP as remaining open and accessible to the public despite the street closure for the festival—was on a corner adjacent to the festival area, rather than inside it. (Dkt. No. 220-1 at 52–53; *see also* Dkt. No. 180-2 at 1–2.) Though Plaintiff does not say so explicitly, the argument appears to be that the TCP's preservation of access to the coffee shop does not preclude Plaintiff's claim of exclusive control because the coffee shop was not in fact located within the festival area. Defendants argue it is unfair to permit Plaintiff to support its trespass claim with this evidence and requests the Court allow them to respond. (Dkt. No. 223 at 4.)

However, there is no need for Defendants to respond, because Plaintiff's trespass claim fails—and would fail—regardless of whether Campfire Coffee was located within the festival grounds. *See* Section IV(A) *infra*. The fact remains that the SEP and TCP granted to Plaintiff for the duration of the festival *do not confer an exclusive, possessory right* over the stretch of South Market Street such that Plaintiff can prevail on a trespass tort claim as a matter of law. The Court's analysis on the issue would not change even with additional briefing from Defendants.

Accordingly, Defendants' motion to strike the new declarations and evidence submitted with Plaintiff's reply is GRANTED. Dkt. Nos. 218, 219, and 220 are STRICKEN.

## III SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—in most civil cases, a preponderance of the evidence. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv. Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv. Inc.*, 809 F.2d at 630 (relying on *Anderson*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–889 (1990).

## IV DISCUSSION

### A. Intentional Trespass

Under Washington law, "an intentional trespass occurs when the defendant's actions have '(1) invaded the plaintiff's interest in the exclusive possession of his property, (2) been committed intentionally, (3) been done with the knowledge and reasonable foreseeability that the act would disturb the plaintiffs' possession, and (4) caused actual and substantial damages.'" *Lavington v. Hillier*, 510 P.3d 373, 381 (Wash. Ct. App. 2022) (quoting *Bradley v. Am. Smelting & Refin. Co.*, 709 P.2d 782, 791 (Wash. 1985) (en banc)). "'[T]he very essence of the nature of property is the right to its exclusive use.'" *Holmquist v. King Cnty.*, 368 P.3d 234, 239 (Wash. Ct. App. 2016) (quoting *Olwell v. Nye & Nissen Co.*, 173 P.2d 652, 654 (1946)). "As a result, property owners are entitled to compensation for the loss of their right to exclusive use and possession of their property." *Lavington*, 510 P.3d at 383. "[T]respass plaintiffs may be able to recover loss of use damages for a temporary invasion of their property[,]" *id.*, even if the

interference with the owner's right of exclusive use and possession is "minimal." *Holmquist*, 368 P.3d at 239. "Intentional trespass requires an intentional act." *Grundy v. Brack Fam. Tr.*, 213 P.3d 619, 625 (Wash. Ct. App. 2009). "[T]he defendant need not have intended the trespass; he need only have been substantially certain that the trespass would result from his intentional actions." *Id.* Put differently, the defendant must know "with reasonable foreseeability that their intentional act will result in intrusion of the plaintiff's interest in exclusive possession." *Lavington*, 510 P.3d at 384. The fourth element "unequivocally require[s] actual and substantial *damages*," as in, "compensation a person can recover in a lawsuit for an injury or a loss[,]" rather than general *damage*, i.e., physical harm to a person or property. *Id.* at 382 (emphasis added).

Washington courts look to the Restatement in analyzing trespass claims. *Matter of Harvey*, 415 P.3d 253, 261 (Wash. Ct. App. 2018) ("In trespass cases, our Supreme Court and this court have frequently adopted the *Restatement* as correctly stating the law as it pertains to privileges to enter land.") (collecting cases). The scope of liability in trespass claims for intentional intrusions on land is explained as follows:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally,
>
> (a) enters land in the *possession* of another, or causes a thing or a third person to do so, or
>
> (b) remains on the land, or
>
> (c) fails to remove from the land a thing which he is under a duty to remove.

RESTATEMENT (SECOND) OF TORTS § 158 (1965) (emphasis added). "Possession" is defined as follows:

> a person who is in possession of land includes only one who
>
> (a) is in *occupancy* of land with intent to control it, or

(b) has been but no longer is in occupancy of land with intent to control it, if, after he has ceased his occupancy without abandoning the land, no other person has obtained possession as stated in Clause (a), or

(c) has the right as against all persons to immediate occupancy of land, if no other person is in possession as stated in Clauses (a) and (b).

*Id.* § 157 (emphasis added). "Occupancy" under § 157 means "such acts done upon the land as manifest a claim of *exclusive control* of the land, and indicate to the public that he who has done them has appropriated it." *Id.* cmt. a (emphasis added).

Here, Plaintiff's motion for summary judgment on its trespass claim fails because Plaintiff cannot establish that it was granted exclusive possession or control over the property on which the festival was held. As Defendants point out (*see* Dkt. No. 198 at 8), Plaintiff offers no legal authority to support its claim that it had an exclusive right to exclude others from the stretch of South Market Street between 15th and 17th. Plaintiff merely argues that by obtaining the SEP from the city of Tacoma, cordoning off the festival area with barriers and fencing, and requiring tickets to enter, it protected its "interest in the exclusive possession" of the festival grounds, giving it the right to exclude others. (Dkt. No. 179 at 10–11; *see also* Dkt. No. 180 at 6 (Araya declaring he "know[s] Washington law recognizes that a permit holder with exclusive possession of a defined area has all the rights of a possessor to exclude others.").) As the Court sees it, Plaintiff's argument "ignores that '[t]he very essence of the nature of property is the *right to its exclusive use*[,]'" including "the right to possess, exclude others from, or dispose of property." *Holmquist*, 368 P.3d at 239 (emphasis added) (citations and internal quotation marks omitted). Plaintiff does not own the street and sidewalks on which the festival was held; the city does. Notably absent from Plaintiff's motion is any citation to language in the SEP or the TCP granting it exclusive possession, any citation to a declaration from a city of Tacoma

representative confirming a right to exclusive possession, or any citation to a municipal code section identifying that a permit holder is granted exclusive possession.

The SEP and TCP gave Plaintiff the right to organize a festival and close the street to traffic, but that alone does not confer possessory rights onto Plaintiff such that Plaintiff had an exclusive right to exclude others from the area.[2] Indeed, the TCP includes in bold text, "ACESS TO COFFEE SHOP & RESIDENCES WILL BE MAINTAINED THROUGH SIDEWALK CLOSURE." (Dkt. No. 180-2 at 1–2.) This alone evidences a lack of exclusive control. RESTATEMENT (SECOND) OF TORTS § 157 cmt. a. Plaintiff, therefore, is not entitled to compensation for the "loss of [its] right to exclusive use and possession of [its] property[,]" *Lavington*, 510 P.3d at 383, because it did not have that right to begin with. At most, Plaintiff was permitted to hold a festival on a public street blocked off to traffic but that permit did not confer exclusive possessory right to the street and the sidewalks.

Accordingly, because there is nothing in the SEP or TCP that confers a possessory right or exclusive control in the festival area onto Plaintiff, Plaintiff has failed to establish its trespass claim as a matter of law. The motion for summary judgment on trespass is DENIED.

**B. Trespass to Chattels**

Trespass to chattels in Washington "is the intentional interference with a party's personal property without justification that deprives the owner of possession or use." *Sexton v. Brown*,

[2] The Tacoma Municipal Code section regarding SEPs underscores this conclusion. It reads, "[t]he special event *will not have significant adverse impact upon residential or business access* and traffic circulation in the same general venue; and the applicant has, in a timely and effective manner, provided sufficient notification to all the public, residents, and/or businesses or others within the reasonable radius of the event venue, as such reasonable radius has been determined by the Permitting Authority." TACOMA, WASH. MUN. CODE § 11.15.100(A)(8) (2026), https://ecode360.com/48391844#48391845 (emphasis added) (last visited July 31, 2026). The Court takes judicial notice of this section because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Case No. 61363–4–I, 2008 WL 4616705, at *5 (Wash. Ct. App. Oct. 20, 2008) (citing RESTATEMENT (SECOND) OF TORTS § 217); *see also Repin v. State*, 392 P.3d 1174, 1186 (Wash. Ct. App. 2017) ("we recognize a cause of action for trespass to chattel"). It is "something less than a conversion." *Damiano v. Lind*, Case No. 29416–1–III, 2011 WL 3719682, at *5 (Wash. Ct. App. Aug. 25, 2011). Someone who commits a trespass to a chattel is subject to liability to the possessor of the chattel by:

(a) dispossessing another of the chattel, or

(b) using or intermeddling with a chattel in the possession of another.

RESTATEMENT (SECOND) OF TORTS § 217. "[A] person who is in 'possession of a chattel' is one who has physical control of the chattel with the intent to exercise such control on his own behalf, or on behalf of another." *Id.* § 216. "While a plaintiff must show that the interference was intentional, no intent to deprive the owner must be shown." *Sexton*, 2008 WL 4616705, at *5.

Here, Plaintiff has not put forth any evidence that shows it alone possessed the chattels that Defendants interfered with on the morning of August 5. Neither has it provided evidence of *which* chattels it possessed or owned. Plaintiff characterizes Defendants' actions as "attempting to destroy or actually destroying a variety of vendor merchandise and goods[,]" (Dkt. No. 179 at 15), but Plaintiff has not established facts demonstrating that Defendants interfered with *its* personal property and that such interference deprived Plaintiff—as the owner—of the "possession or use" of *its* property, rather than the property of Plaintiff's 37 vendors. *Damiano*, 2011 WL 3719682, at *5; (Dkt. No. 180 at 5). In short, there is insufficient evidence on this record that Plaintiff owned, possessed, or was in control of the merchandise and other items that Defendants purportedly interfered with to give rise to a trespass to chattels claim. Plaintiff's motion for summary judgment on its trespass to chattels claim is therefore DENIED.

## V CONCLUSION

The Court has considered Plaintiff's motion for summary judgment (Dkt. No. 179), Defendants' response in opposition (Dkt. No. 198), Plaintiff's reply (Dkt. No. 217), and the remainder of the record. Defendants' motion to strike (Dkt. No. 223) is GRANTED and Dkt. Nos. 218, 219, and 220 are STRICKEN. Dkt. No. 211 is likewise STRICKEN. Plaintiff's partial motion for summary judgment (Dkt. No. 179) is DENIED.

Dated this 31st day of July 2026.



David G. Estudillo
United States District Judge