UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERITREAN ASSOCIATION OF GREATER SEATTLE,<br>Plaintiff,<br>v.<br>HENOCK TECKLE GEBREKIDAN et al.,<br>Defendants. | CASE NO. 3:24-cv-05517-DGE<br><br>ORDER ON MOTION FOR SANCTIONS (DKT. NO. 162-1) |

Before the Court is Plaintiff's motion for sanctions, brought pursuant to Federal Rule of Civil Procedure 37, to address various alleged discovery violations by Defendants. (Dkt. No. 162-1.) This motion has been pending since March 2026. In the interim, the Court has denied Plaintiff's partial motion for summary judgment (Dkt. No. 233), granted Defendants' *Daubert* motion (Dkt. No. 235), and denied Plaintiff's motion for reconsideration of parts of the order granting the *Daubert* motion (Dkt. No. 237). After Plaintiff did not believe it could prepare its case for trial in light of these rulings (Dkt. No. 238), the Court also granted the Parties' stipulated motion to dismiss this case with prejudice. (Dkt. Nos. 240, 241.) In dismissing the case, the

Court explained that before it entered judgment, it would issue a ruling on Plaintiff's pending motion for sanctions. (Dkt. No. 241 at 1.) For the reasons that follow, Plaintiff's motion is GRANTED in part.

## I BACKGROUND

Plaintiff's motion for sanctions requests a broad spectrum of evidentiary and monetary sanctions stemming from Defendants' repeated failures to engage in the discovery process. (*See* Dkt. No. 162-1.) The basic background underlying the request for sanctions is as follows: At a hearing on December 10, 2025, the Court admonished the Parties for their ongoing "failure to engage in meaningful discovery[]" and ordered them to serve new written discovery requests that were compliant with the federal and local rules, narrowly tailored and relevant to the issues at hand, and not duplicative of previous requests. (Dkt. No. 121 at 1–2.) The Court also began holding weekly hearings until "discovery and case management issues [were] resolved." (*Id.*)

On February 6, 2026, during one such hearing, Plaintiff's counsel brought an issue to the Court's attention regarding incomplete production from Defendants.[1] Plaintiff's counsel explained that Defendants had failed to turn over many responsive materials through written discovery; Plaintiff's counsel found out during depositions that some Defendants admitted to not searching at all, deleting old emails or social media, or claiming they did not remember being sent discovery requests. Plaintiff's counsel was concerned because they had gone to the trouble of deposing all 13 Defendants only to find out that many of them had not conducted a good faith search for responsive documents prior to their depositions. Counsel for Defendants acknowledged the issue and stated they sent new search instructions to all 13 Defendants that

[1] The issue was initially raised, and briefly commented on by both sides, in a joint status report prepared by the Parties in preparation for the February 6 hearing. (*See* Dkt. No. 140.)

were more explicit and were translated to Tigrinya. The Court directed the Parties to confer on the additional production once it was received and reviewed by Defendants' counsel, and if necessary, to bring any remaining issues to the Court during the next discovery hearing.

In the Parties' next joint status report, Plaintiff's counsel raised concerns about the "very limited supplemental production" it had received from Defendants. (Dkt. No. 143 at 2.) At a hearing on February 17, 2026, Plaintiff's counsel represented that there were many responsive materials they knew existed, but still had not been produced by Defendants in their second search. Although Defendants' counsel stated all Defendants had gone back and looked for responsive materials a second time, Plaintiff's counsel was not confident these additional searches were sufficient.

To remedy this issue, the Court ordered each Defendant to "sign a declaration identifying and describing with specificity what documents and materials they looked for, where they looked, and what they found." (Dkt. No. 145 at 1.) In its minute order summarizing the February 17 hearing, the Court authorized Plaintiff to file a discovery motion addressing the issues with Plaintiff's supplemental production. (*Id.* at 2.)

Defendants apparently provided these declarations on February 25, but according to Plaintiff, the declarations "(a) fail[ed] to provide a comparison of the means by which they searched for documents before the issuance of the Order; (b) [failed to provide] a comparison of the documents and materials each 'found' through their respective searches; and (c) [failed to provide] necessarily what each 'found' having completed the searches described in their declarations." (Dkt. No. 157 at 9–10.) Further, no Defendant "produced any further documents [or] materials," nor did they provide "an amended response or responses" to prior discovery requests. (*Id.* at 10.)

Plaintiff argues all 13 Defendants have engaged in some level of discovery misconduct, ranging from the simple failure to produce responsive documents to willful destruction of evidence following depositions. Plaintiff argues the following:

- Elen Tesfaghiorghis, Yordanos Gebremichael Gebregiorgis, Temesghen Kahsay, Haile Angesom Tseada, Afewerki Tesfamariam, Grebrehiwet Teklehaimanot, Hadush Brhane, and Awet Tsehaye, produced no documents in response to Plaintiff's initial discovery requests but at their depositions, admitted they did not search or could not remember searching for responsive materials. (Dkt. Nos. 157-1 at 91–92, 94–96; 157-2 at 89–94; 157-3 at 100–103; 157-5 at 123–130; 157-6 at 121–129; 157-7 at 82–85; 160-2 at 137–148; 160-4 at 7–19, 73–78.) Plaintiff conducted a subsequent search for each Defendant and found various social media posts, WhatsApp or email messages, letters, and/or video broadcasts or livestreams that were responsive to various discovery requests. (Dkt. No. 155 at 5–13.)
- Gebregiorgis improperly objected to discovery requests by asserting a constitutional privilege, an argument that has been foreclosed by this Court twice already.[2] (Dkt. No. 160-4 at 7–18.)
- Brhane, Kahsay, and Tesfaghiorghis destroyed evidence after litigation commenced and after their depositions. Brhane deleted his TikTok posts before January 1, 2025, including posts that were used during his deposition, as well as Facebook posts between July 1 and August 22, 2023 (Dkt. No. 155 at 11); Kahsay "purged" both his TikTok account and his Facebook account prior to May 17, 2024, deleting all conduct related to

[2] Though not explicitly called out by Plaintiff, the record indicates all Defendants objected on constitutional grounds throughout their responses to Plaintiff's requests for production. (*See generally* Dkt. Nos. 157-1–157-8; 160-1–160-4.)

Brigade Nhamedu (*id.*);[3] and Tesfaghiorghis deleted Facebook posts and her TikTok history prior to August 9, 2023 (*id.* at 6).

- Henock Teckle Gebrekidan produced 13 photos from the festival but at his deposition testified he was "just in the process" of answering Plaintiff's discovery requests, despite already verifying his responses to the written discovery requests. (Dkt. No. 157-8 at 113–115.)
- Saba Kidane Heritage limited the search criteria in her subsequent declaration to August 1–6 2023, even though the discovery requests required her to search for documents from 2023 through the present. (*Compare* Dkt. No. 167-1 at 8 (stating she searched for the time period of "July/August 2023–present") *with id.* at 9 (stating she searched her iPhone, laptop, email accounts, social media accounts for the period "08/01/2023–08/06/2023").) Heritage also deleted two questions from the declaration she provided to this Court. (*Id.*; *see also* Dkt. No. 155 at 7 (Heritage deleted Question 9, which required her to identify financial and bank records, and Question 11, which required her to identify the physical locations she searched for responsive materials).)
- Solomon Gebreyesus provided 15 photos from the festival in response to Plaintiff's discovery requests but at his deposition, admitted that he did not search his cell phone, text messages, airline ticket, hotel bill, or Uber receipts. (Dkt. No. 160-1 at 147–149.)
- Yonantan Tewelde produced a documentary, YouTube links, and an email, but admitted in his responses and objections to Plaintiff's requests for production to altering the

[3] Brigade Nhamedu is an Eritrean diaspora "youth movement" group advocating against the Eritrean government. (*See* Dkt. No. 160-2 at 71–72.)

videos; he apparently stated he had unedited versions of the video recordings that were never produced. (Dkt. No. 160-3 at 7–8, 31, 36–37, 41–42, 128.)

- Esayas Tewolde Tesfamicael apparently livestreamed the entire festival incident but produced no videos in either production, though excerpts of his livestream obtained by Plaintiff were used in his deposition. (Dkt. Nos. 155 at 12; 157-4 at 165–168; 167-1 at 15.) He claimed at his deposition he lost the phone he used to film the events at the festival. (Dkt. No. 157-4 at 178–179.)

Defendants respond they conducted "targeted, custodian-focused searches across devices, email accounts, social media and messaging platforms, financial records, cloud storage, and physical files tailored to the July–August 2023 timeframe[,]" using appropriate keywords and certifying their completeness in their supplemental declarations. (Dkt. Nos. 166 at 9; 167-1 at 2–47.) In support of this claim, Defendants attach more than 90 additional pages of discovery that was produced in February 2026, which they assert "confirms ongoing, iterative compliance rather than deficiency." (Dkt. Nos. 166 at 10; 167-2 at 2–97.) In reply, Plaintiff argues these documents were produced nearly a week before the February 18 minute order that kicked off the issue of the supplemental declarations in the first place and were not produced in response to the Court's order as claimed by Defendants. (Dkt. No. 168 at 2.)

## II LEGAL STANDARD

"Sanctions may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir.2001), *cert. denied sub nom.*, *McLachlan v. Simon,* 536 U.S. 941 (2002). "When a party fails to 'obey an order to provide or permit discovery,' this Court may impose

sanctions" as enumerated in Federal Rule of Civil Procedure 37(b)(2)(A). *Larsen v. PTT, LLC*, Case No. 3:18-cv-05275-TMC, 2025 WL 241105, at *4 (W.D. Wash. Jan. 17, 2025) (quoting Fed. R. Civ. P. 37(b)(2)(A)). "The party against whom an award of expenses is sought bears the burden of showing their 'failure was substantially justified' or that an award is otherwise 'unjust.' *Id.* (quoting Fed. R. Civ. P. 37(b)(2)(C)). The Court can also order monetary sanctions based on its inherent authority. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1109 (9th Cir. 2005).

Generally, sanctions are only appropriate in "'extreme circumstances' and where the violation is 'due to willfulness, bad faith, or fault of the party.'" *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (citation omitted), *cert. denied*, 537 U.S. 1018 (2002). "Disobedient conduct not shown to be outside the litigant's control meets this standard." *Id.* "'The decision to impose sanctions is left to the court's discretion.'" *Ralon v. Kaiser Found. Health Plan, Inc.*, Case No. 23-cv-03344-JCS, 2025 WL 833448, at *2 (N.D. Cal. Mar. 17, 2025) (citations omitted).

## III DISCUSSION

In general, Defendants' failure to produce responsive documents, and their subsequent failure to produce documents even after ordered to do so by the Court, amounts to sanctionable misconduct under Rule 37.

Several Defendants admitted in depositions that they never searched for responsive documents, did not remember being asked to search or being sent requests for production, or that they searched some platforms but not others. (*E.g.*, Dkt. Nos. 157-2 at 92 (Tsehaye stating he did not recall ever seeing Plaintiff's December 2025 requests for production before); 157-6 at 125 (Brhane stating "I know that I don't have anything to submit, so I didn't bother to search.");

157-7 at 85 (Tsaeda admitting he did not search for any documents in response to requests for production) 160-4 at 74–75 (Gebregiorgis explaining that he did not collect any videos or photographs in response to discovery requests).) It is possible, as Defendants asserted in a joint status report, that the failure to search for and produce responsive documents was attributable to "[the] language barrier, a lack of technological sophistication, and/or impossibility[.]" (Dkt. No. 140 at 1.) Even taking this assertion as true, the Court is concerned that even after the deficient production was identified by both Parties, and Defendants signed their declarations as required by court order, Defendants persisted in their failures to produce responsive documents.

In their response, Defendants argue that Plaintiff's discovery requests were overly broad, lacked particularity, and "swept in materials" protected by the First Amendment (Dkt. No. 166 at 3), but do not necessarily refute the overall thrust of Plaintiff's argument, i.e., that there are a number of responsive documents that Defendants failed to produce after at least two searches and that Plaintiff located these documents in its own search. For example, Defendants still do not contest Plaintiff's argument that Brhane, Kahsay, and Tesfaghiorghis deleted responsive content from their social media accounts after this lawsuit was filed (and as recently as after their depositions in early 2026). (*See generally* Dkt. No. 166.) They do not dispute that Heritage both deleted questions from her declaration attesting to her search and, of her own volition, narrowed the date range for her search to just a five-day period in 2023. (*See id.*) Nor do they dispute that Tewelde failed to produce the unedited version of videos he had taken at the festival, despite having them in his custody. (*See id.*) Defendants attached roughly 90 pages of production from "February 2026" to their response (*see* Dkt. No. 167-2), but Plaintiff points out that these documents were produced nearly a week before the Court's February 18 minute order and nearly two weeks before Defendants provided their supplemental declarations—in other words,

Defendants produced no documents whatsoever in response to the Court's order requiring Defendants to sign declarations that "identif[ied] and describe[ed] with specificity what documents and materials they looked for, where they looked, and what they found." (Dkt. No. 145 at 1.) As a result, Plaintiff argues it is entitled to fees and costs for the following:

> [A]ttorney time spent reviewing each of the thirteen declarations and preparing the comparative analysis set forth in Section B; the costs of FOIA and public disclosure requests submitted to the City of Seattle, City of Tacoma, and federal agencies to obtain Plan A letters that Defendants should have produced; the investigative costs incurred by Isaac Araya in independently locating and preserving the social media content Defendants concealed; attorney time spent preparing and arguing the motion to compel that led to the February 18, 2026 Order; and attorney time spent preparing this motion.

(Dkt. No. 162-1 at 25.)

The Court agrees that some monetary sanctions are warranted after Defendants' failure to comply with their discovery obligations, their failure to respond to prior court orders regarding discovery, and in response to this motion, their failure to meaningfully explain their lack of compliance. *E.g.*, *King v. M/V DYNASTY*, Case No. C09-0792RSL, 2010 WL 11530772, at *1 (W.D. Wash. Apr. 29, 2010) (ordering monetary sanctions when "Plaintiff neither acknowledges nor explains his failure to respond to defendant's written discovery[]"); *Harris v. Skanska USA Bldg., Inc.*, Case No. C22-555RSM, 2023 WL 8004708, at *1–2 (W.D. Wash. Nov. 17, 2023) (monetary sanctions awarded under Rule 37 when the court ordered the plaintiff to respond to the defendant's discovery requests and the plaintiff failed to do so); *cf. HDT Bio Corp. v. Emcure Pharms., Ltd.*, Case No. C22-0334JLR, 2023 WL 4296412, at *5 (W.D. Wash. June 30, 2023) (declining to award fees and costs under Rule 37(b)(2)(C) because the defendant did not violate a discovery order).

## IV CONCLUSION

Plaintiff's motion (Dkt. No. 162-1) is therefore GRANTED in part as to monetary sanctions for tasks reasonably related to Defendants' discovery misconduct. This includes (1) time spent reviewing Defendants' supplemental declarations as submitted on February 25, 2026; (2) the costs of FOIA and public disclosure requests submitted to the cities of Seattle and Tacoma for information related to Plaintiff's claims for relief in this lawsuit; and (3) attorney and/or paralegal time spent preparing the briefing and related filings for this motion. These categories SHALL be owed by all Defendants jointly and severally. In addition, the Court will award fees and costs related to the depositions of Defendants as follows:[4]

- Deposition of Elen Tesfaghiorghis: attorney fees calculated at 30% of deposition time[5] and interpreter fees calculated at 30% of the fees charged for the deposition;
- Deposition of Yordanos Gebremichael Gebregiorgis: attorney fees calculated at 20% of deposition time and interpreter fees calculated at 20% of the fees charged for the deposition;
- Deposition of Temesghen Kahsay: attorney fees calculated at 30% of deposition time and interpreter fees calculated at 30% of the fees charged for the deposition;
- Deposition of Haile Angesom Tseada: attorney fees calculated at 30% of deposition time and interpreter fees calculated at 30% of the fees charged for the deposition;

---

[4] The Court believes the most efficient way to address fees and costs associated with the depositions is to award percentages of the various fees and costs relative to the egregiousness of the discovery violations as described by Plaintiff. (*See* Dkt. No. 162-1 at 8, 23–26.)

[5] For example, if a deposition began at 8:00 a.m. and lasted until 1:30 p.m., the attorney fees would be calculated at a rate of 30% of 5.5 hours.

- Deposition of Afewerki Tesfamariam: attorney fees calculated at 30% of deposition time and interpreter fees calculated at 30% of the fees charged for the deposition;
- Deposition of Gebrehiwet Teklehaimanot: attorney fees calculated at 25% of deposition time, travel costs, and interpreter fees calculated at 25% of the fees charged for the deposition;
- Deposition of Hadush Brhane: attorney fees calculated at 30% of deposition time and interpreter fees calculated at 30% of the fees charged for the deposition;
- Deposition of Henock Teckle Gebrekidan: attorney fees calculated at 25% of deposition time and interpreter fees calculated at 25% of the fees charged for the deposition;
- Deposition of Saba Kidane Heritage: attorney fees calculated at 30% of deposition time and interpreter fees calculated at 30% of the fees charged for the deposition;
- Deposition of Awet Tsehaye: attorney fees calculated at 20% of deposition time and interpreter fees calculated at 20% of the fees charged for the deposition;
- Deposition of Solomon Gebreyesus: attorney fees calculated at 20% of deposition time and interpreter fees calculated at 20% of the fees charged for the deposition;
- Deposition of Yonatan Tewelde: attorney fees calculated at 20% of deposition time and interpreter fees calculated at 20% of the fees charged for the deposition; and
- Deposition of Esayas Tewolde Tesfamicael: attorney fees calculated at 25% of deposition time and interpreter fees calculated at 25% of the fees charged for the deposition.

The fees and costs associated with the depositions are owed individually by each defendant for their respective deposition. All other requests for evidentiary sanctions are DENIED.

With respect to the specific tasks and subjects identified above, Plaintiff SHALL submit a fee declaration on or before **September 9, 2026**, that outlines the following:

- The date the task was completed;
- The number of hours worked on the task;
- The timekeeper engaged in the task;
- The timekeeper's hourly rate;
- A detailed description of the task; and
- The total hours billed and total fees accrued for each timekeeper.

Defendants may file a brief responding to Plaintiff's fee declaration no later than **September 16, 2026**. The response SHALL not exceed 10 pages and Plaintiff SHALL NOT file a reply. The Court will analyze the reasonableness of Plaintiff's request for such fees at that time and will enter an order accordingly.

The Clerk is directed to calendar these events.

Dated this 26th day of August 2026.

David G. Estudillo
United States District Judge